**STATE of Tennessee, Appellee,**

v.

**Larry Mason LEACH, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 7, 1984.

Permission to Appeal Denied by Supreme Court Jan. 28, 1985.

W. Mark Ward, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen., Raymond S. Leathers, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Phillip G. Harris, John W. Overton, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Larry Mason Leach, was convicted of aggravated rape, aggravated kidnapping, and of a felony-firearms violation. His punishment was fixed at forty (40) years for each of the first two (2) offenses, and to three (3) years for the third offense. The trial court ordered the sentences to be served consecutively to each other.

In this appeal, the defendant contests the sufficiency of the evidence, argues that the trial court erred by refusing a motion in limine regarding his prior record, says the trial court improperly refused reference to the prosecution of the defendant in Tipton County, urges that the trial court erred in overruling the defendant's objections to certain statements made by State's counsel during the State's closing argument, and says that the trial court erred in imposing excessive and consecutive sentences. We find no merit to any of these complaints; however, as we will explain later in this opinion, the defendant's felony-firearms conviction must be reversed.

The evidence that was presented to the jury in this case showed that the sixteen (16) year old victim was driven by the defendant to four (4) different secluded locations and was repeatedly raped over a period of approximately five (5) hours. This episode began in Shelby County and ended in nearby Tipton County where the victim escaped from the defendant's truck after shooting him with his .45 automatic after he dozed off to sleep. The defendant is paralyzed as a result.

The victim testified that at about 4:20 p.m. on October 20, 1982, she was eating her dinner behind her father's store. The defendant drove up and forced her at gunpoint to enter his truck. He continued to hold one of his two guns on her, forced her to undress, and took her to several secluded fields in Shelby County. During the five (5) hour period, the defendant forced the victim to submit to various sexual acts. He tied her to trees, forced her to participate in oral sex, placed his fingers and penis in her vagina, attempted to place his penis in her rectum, and forced her to masturbate. At one point, in an effort to "bring some sense to him," the victim told the defendant that God loved him, but he threatened to blow her head off if he heard anymore about her God. The final incident occurred at a field in Tipton County where the defendant's truck got stuck in a rut. The defendant fell asleep after telling the victim that they would have to spend the night there. The victim saw this as her best possible chance to escape. Believing that she would have to disable the defendant, since she had to crawl over him to get out of the truck, she shot him with one of his guns. She saw a light in the distance and ran in that direction, through a field, to get help.

Mrs. Bobbie Fayne testified that at around 9:00 p.m. that night, the victim appeared on her doorstep, frightened, crying, and covered with cockleburs. The victim told Mrs. Fayne and her husband that she had been kidnapped and raped by the defendant, and that she had shot him. Mr. Fayne contacted the victim's family and a Tipton County constable.

The State's evidence further established that the victim's father approached Officer S.E. Watson of the Memphis Police Department at 5:10 p.m. on October 20. Ms. Watson went with the victim's father to the latter's store, and observed the victim's purse and partially eaten dinner where they had been left. Officer J.C. Noe was called later and saw the same items at that

location. After receiving the call from Mr. Fayne, Officer Noe went to the Fayne residence and then took the victim to the Rape Crisis Center. After the victim was examined at the Rape Crisis Center, she showed Officers Noe and Anderson the places she had been taken to by the defendant. Two other officers and the victim retraced the route again two days later.

A forensic serologist analyzed the results of the Rape Crisis Center examination. She testified that semenal acid phosphate was found on one of the victim's vaginal swabs. The witness also discovered acid phosphate and spermatozoa on the defendant's jeans and handkerchief as well as on the seat of his truck.

We also point out that the defendant was apprehended by the police when they found him in his disabled truck.

■ The defendant first challenges the sufficiency of the evidence. It is well established in this State that a jury verdict approved by the trial judge accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State. *State v. Hatchett*, 560 S.W.2d 627 (Tenn. 1978); *State v. Townsend*, 525 S.W.2d 842 (Tenn.1975). On appeal, the State is entitled to the strongest legitimate view of the evidence, and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832 (Tenn. 1978). A verdict against the defendant removes a presumption of innocence and raises a presumption of guilt upon appeal. *State v. Grace*, 493 S.W.2d 474 (Tenn.1973). Where the sufficiency of the evidence is challenged, the relevant question for the Appellate Court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. T.R. A.P. 13(e).

■ Under the facts of this case as we have summarized above, and after a thorough review of the record, it is clear that the evidence is overwhelming to support the jury's verdict finding the defendant guilty of aggravated rape and aggravated kidnapping beyond a reasonable doubt. T.R.A.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Next the defendant says that the trial court erred by refusing a motion in limine regarding his prior criminal record. At the beginning of the trial, the defendant requested the trial court to prohibit the State from introducing any evidence regarding the defendant's past record. The trial judge stated that such matters would be taken up at trial if they arose.

■ The testimony to which the defendant objected was given after the victim had described what occurred at the first field. After testifying that she was forced at gunpoint to get back into the truck, the State asked her what she did after getting into the truck. She responded, "I sat as close to that door as I could, and I was, you know, asking him, you know, like, why wouldn't he let me walk back and all, and I had asked him if he had done stuff like that before and he said yes, like there's nothing to it." No objection was made to this until after the victim had completed her testimony and after another witness had testified, at which point the defendant moved for and was denied a mistrial. Not only has the defendant waived consideration of the issue by failing to make contemporaneous objection, *State v. Sammons*, 656 S.W.2d 862, 871 (Tenn.Cr.App.1982), but he also rejected the trial court's offer of a curative instruction.

■ Moreover, the defendant's statement was made during the course of his assaults upon the victim, was inseparably linked to the facts surrounding the incident, went to the question of his intent in the commission of the present crimes, and was expressive of his mental attitude. As such, the statement was admissible as being a part of the *res gestae*. *See Wakefield v. State*, 175 Tenn. 111, 132 S.W.2d 217 (1939); *Garrison v. State*, 163 Tenn. 108, 40 S.W.2d 1009 (1931); *see also Shelton v. State*, 3 Tenn.Cr.App. 310, 460 S.W.2d 869 (1970).

The defendant next complains that he should have been allowed to introduce proof that he was also being prosecuted in Tipton County. He contends that this evidence was relevant to the issue of venue and relevant to emphasize to the jury that he was not on trial for his actions in Tipton County.

■ Evidence is relevant if it has any tendency to make the existence of any fact that is of any consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Banks,* 564 S.W.2d 947, 949 (Tenn.1978).

■ The defendant was on trial in this case for crimes committed in Shelby County. We agree with the State that whether or not the defendant was being prosecuted in Tipton County has nothing to do with proof of venue in the present case. Also, it was readily apparent from the proof that the defendant was on trial for offenses committed in Shelby County and not Tipton County. There is no merit to this complaint.

The defendant's fourth complaint is that the State's closing argument was improper and highly prejudicial. While the defendant did not object contemporaneously to every comment that he considers improper, he did object on two occasions to the following remarks made by each of the two prosecuting attorneys:

> You know, this offense was caused by that mind, that twisted, deviant mind, that twisted deviant mind that is still intact, completely intact.

> . . . . .

> Larry Mason Leach put it there and he put it there when he was having sexual intercourse, or his tortured, warped, stupid, ignorant version of it with a 16-year-old child. That's what she is.

The trial court overruled the defendant's objections, saying that logical inferences could be drawn by either side from the proof.

■ Trial judges have wide discretion in controlling the arguments of counsel, and their action will not be reversed absent abuse of that discretion. *White v. State,* 210 Tenn. 78, 90–91, 356 S.W.2d 411, 417 (1962). When argument is complained of, the general test applied is whether the improper conduct could have affected the verdict to the prejudice of the defendant. *Briggs v. State,* 463 S.W.2d 161, 164–165 (Tenn.Cr.App.1970). This Court has listed five (5) factors to consider in making this decision:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2. The curative measures undertaken by the court and the prosecution.

3. The intent of the prosecutor in making the improper statement.

4. The cumulative effect of the improper conduct and any other errors in the record.

5. The relative strength or weakness of the case.

*Judge v. State,* 539 S.W.2d 340, 344 (Tenn. Cr.App.1976).

■ We agree with the defendant that the prosecuting attorneys' remarks were improper. Nevertheless, the error here is harmless, given the overwhelming proof of the defendant's guilt. *See Vermilye v. State,* 584 S.W.2d 226, 230 (Tenn.Cr.App. 1979). When examined within the context of the factors mentioned in *Judge, supra,* we find that the prosecuting attorneys' remarks resulted in no prejudice to the defendant.

■ The defendant next argues that the sentences imposed by the trial court were excessive and that the trial judge did not properly weigh the defendant's physical condition in setting the sentences. The defendant complains that his paralysis should have been considered when determining the deterrent effect. Not only is this argument without merit, but the deterrent effect is only one of the purposes of the Criminal Sentencing Reform Act. T.C.A. § 40–35–102.

After reviewing the mitigating and enhancement factors as set forth in T.C.A. §§ 40–35–110 and 40–35–111, the trial court determined that the enhancement factors far outweighed the mitigating factors. The only mitigating factor found by the trial court was the defendant's possible intoxication that may have existed at the time these acts were committed. The trial court further considered the facts of the case, the presentence report, the deterrent effect, and the defendant's prior record in setting the sentences. We find that the trial court properly imposed the defendant's sentences for his convictions of aggravated rape and aggravated kidnapping, in accordance with the Criminal Sentencing Reform Act.

Further, with respect to his aggravated rape and aggravated kidnapping convictions, we find the defendant's complaint about his consecutive sentences to be meritless.

The trial court found the defendant to be a persistent, multiple, and dangerous offender, as such terms are defined by *Gray v. State*, 538 S.W.2d 391 (Tenn.1976). The record fully supports this finding by the trial court. Obviously, since the defendant falls within three (3) of the *Gray* classifications, he was an eligible candidate for consecutive sentencing. The trial court properly exercised its discretion in fixing consecutive sentences in this case.

Finally, we take cognizance of the defendant's reference in his brief to the fact that while the jury returned verdicts of guilt as to aggravated rape and aggravated kidnapping, "no verdict was returned on the carrying a pistol indictment."

The defendant was charged in a two count indictment (No. B–90241) with aggravated rape and aggravated kidnapping. In a separate three count indictment (No. B–93008), the defendant was charged in the first two counts with the misdemeanor offense of carrying a pistol with intent to go armed, and in the third count with the felony offense of carrying a pistol after having been previously convicted of a felony. The latter felony charge is proscribed by T.C.A. § 39–6–1716.

The trial court's minute entry of July 27, 1983, indicates that at the outset of the trial, the defendant entered a plea of not guilty to the counts in Indictment No. B–90241 and entered a plea of "Guilty to indictment # B–93008 to the offense of Carry (sic) a pistol." However, we note that the transcript shows that when the "indictments" were read to the jury, "pleas of not guilty were entered." See Transcript, Vol. 4, p. 355. We are unable to find in the transcript any formal change of the defendant's not guilty plea to one of guilty regarding any of the counts in Indictment No. B–93008. The record is absent any written plea of guilty signed by the defendant regarding any of the counts in the weapons Indictment No. B–93008. Nevertheless, statements made by counsel and the trial court during the trial indicate that some plea change was made regarding the offense of carrying a pistol but these statements are ambiguous and shed little light on the question of what actually occured with regard to a plea change on the weapons charge.

At trial, the defendant argued that the counts in Indictment No. B–93008 should have been submitted to the jury for its verdict, notwithstanding that he had changed his plea to one of guilty regarding the misdemeanor charge of carrying a pistol. The trial court was of the opinion that in view of the defendant's guilty plea, it was the trial court's duty under the Criminal Sentencing Reform Act to make a finding and to impose sentence on the felony-firearms count in that indictment.

At any rate, the record shows that the trial court did not submit the charges in Indictment No. B–93008 to the jury. Rather, at the sentencing hearing on September 7, 1983, the trial court (as reflected by its judgment order) found the defendant guilty at a "bench trial" of the offense of "convicted felon *in possession* of a firearm"

and imposed a three (3) year sentence (emphasis added).

As stated, the defendant was indicted in the third count of Indictment No. B–93008 for carrying a pistol with intent to go armed after having been previously convicted of a felony. Assuming *arguendo* that the trial court's description of the offense in its judgment order could be interpreted as a finding of guilt of the indicted charge, we find other problems with the procedure used in finding the defendant guilty of this felony-firearms offense.

We need only to discuss one of the other problems, and that is that the record fails to show that the defendant ever entered a plea of guilty to the felony-firearms offense, as such was charged in the third count of Indictment No. B–93008.

At most, and as previously indicated, the defendant's guilty plea would have related only to the first two counts of that indictment, and these counts only charged the misdemeanor offense of carrying a pistol with intent to go armed.

Thus, without considering whether the misdemeanor counts of Indictment No. B–93008 should have been submitted to the jury, we conclude from the record that the defendant never pled guilty to the felony-firearms offense, as charged in the third count of Indictment No. B–93008, and that this charge should have been submitted, along with appropriate instructions, to the jury for its verdict as to the defendant's guilt or innocence of that charge. Also, we point out that a bifurcated procedure would have been necessary for a proper resolution of that charge. *State v. Warr,* 604 S.W.2d 66 (Tenn.Cr.App.1980).

For the reasons stated, we affirm the defendant's convictions for aggravated rape and aggravated kidnapping; however, we reverse and dismiss the defendant's conviction for the felony-firearms offense as charged in the third count of Indictment No. B–93008.

WALKER, P.J., and BYERS, J., concur.